IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

TODD RUSTY NORRIS,

    Plaintiff,

v.

ADOLFSON & PETERSON, INC, A MINNESOTA
CORPORATION DOING BUSINESS IN COLORADO,
AND AP MOUNTAIN STATES, LLC, D/B/A ADOLFSON
& PETERSON CONSTRUCTION,

    Defendants.

_____

**COMPLAINT AND JURY DEMAND**
_____

Plaintiff Todd Rusty Norris, through undersigned Counsel, for his Complaint against Defendants, states as follows:

**NATURE OF ACTION**

1. This is an employment discrimination action pursuant to the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12111–12117, and the Colorado Anti-Discrimination Act (CADA), Colo. Rev. Stat. §§ 24-34-401, *et. seq.*

**PARTIES**

2. Plaintiff Todd Rusty Norris ("Mr. Norris") currently resides at 509 Easy Street, Glenwood Springs, Colorado 81601. Mr. Norris is a former employee of AP

Mountain States, LLC, d/b/a Adolfson & Peterson Construction ("AP, LLC," "Employer," or "Defendant")

3. Defendant Adolfson & Peterson, Inc. ("A&P, Inc.") is a commercial construction company with locations across the United States.

4. A&P, Inc. is incorporated in Minnesota and does business in Colorado.

5. A&P, Inc. filed an application for authority to transact business in Colorado on about December 10, 1980.

6. A&P, Inc. has filed periodic reports with the Colorado Secretary of State annually from 1991 through 2021.

7. A&P, Inc.'s registered agent for service of process is C T Corporation System, 7700 East Arapahoe Road, Suite 220, Centennial, Colorado 80112-1268.

8. Defendant AP, LLC is a Colorado limited liability company. It maintains its principal office at 797 Ventura Street, Aurora, Colorado 80011.

9. Defendant's registered agent for service of process is C T Corporation System, 7700 East Arapahoe Road, Suite 220, Centennial, Colorado 80112-1268.

## JURISDICTION AND VENUE

10. This Court has subject-matter jurisdiction over Mr. Norris' ADA claim under 28 U.S.C. §§ 1331, 1343 because it is a civil rights action arising under the laws of the United States.

11. This Court has supplemental jurisdiction over Mr. Norris' CADA claim under 28 U.S.C. § 1367, as his CADA claim is related to his ADA claim and arises from the same controversy and events.

12. This Court will obtain personal jurisdiction over the parties because Mr. Norris resides in this judicial district and has invoked the jurisdiction of this Court. Defendants A&P, Inc. and AP, LLC, which do business in this district, will be served with process in the district.

13. Venue in this district is proper under 28 U.S.C. § 1391(b) because the parties reside in this judicial district, and the events giving rise to this action occurred in this judicial district.

## ADMINISTRATIVE PROCEDURE AND EXHAUSTION OF REMEDIES

14. Mr. Norris timely filed a Charge of Discrimination with the Colorado Civil Rights Division on or about May 12, 2020, which was assigned a charge number of Charge No. E20000008455.

15. Under the work-sharing agreement between the Colorado Civil Rights Division and the Equal Employment Opportunity Commission, Mr. Norris' Charge of Discrimination was also concurrently filed with the Equal Employment Opportunity Commission with a charge number of 32A-2020-00491.

16. Mr. Norris was mailed a "Notice of Right to Sue" letter on February 23, 2021 by the Equal Employment Opportunity Commission, granting the right to file this suit. This Complaint is filed within 90 days of Mr. Norris' receipt of his right to sue letter from the EEOC.

17. Mr. Norris has satisfied all other administrative and procedural prerequisites to filing this Complaint.

## FACTS

18. A&P, Inc. employs approximately 750 employees across the United States.

19. On information and belief, AP, LLC is a wholly owned subsidiary of A&P, Inc.

20. AP, LLC does business in several western states, including Colorado, where it employs approximately 360 employees.

21. On information and belief, A&P, Inc. and AP, LLC are a single employer within the meaning of *Frank v. U.S. West, Inc.*, 3 F.3d 1357 (10th Cir. 1993).

22. Both Defendants are "covered entities" within the meaning of 42 U.S.C. § 1211 and an "employers" within the meaning of Colo. Rev. Stat. § 24-34-401(3).

23. AP, LLC employed Mr. Norris as a construction superintendent in October 2019.

24. In 2019, Mr. Norris began noticing pain in this left hip.

25. Mr. Norris's hip pain became progressively worse.

26. In November 2019, Mr. Norris was diagnosed with degenerative joint disease in his left hip.

27. After two cortisone injections, which gave no relief, Mr. Norris had MRI imaging of his left hip on December 11, 2019.

28. After Mr. Norris' doctor explained the benefits of Total Hip Arthroplasty, Mr. Norris decided to have the hip replacement surgery.

29. On December 12, 2019, Mr. Norris informed his supervisor, Superintendent Shane Steere ("Mr. Steere"), that he planned to have hip replacement surgery.

30. Mr. Norris requested time off for medical appointments relating to his left hip from Mr. Steere.

31. After Mr. Norris notified Mr. Steere about his degenerative joint disease, Mr. Norris noticed Mr. Steere began to treat him differently than other employees who reported to Mr. Steere.

32. For example, Mr. Steere began to stop communicating to Mr. Norris about assignments and meetings.

33. Mr. Steere became upset when Mr. Norris asked for time off to attend medical appointments.

34. On January 24, 2020, Mr. Norris was experiencing an unusual amount of left hip pain and asked Mr. Steere for permission to leave work early. Mr. Steere denied the request and required Mr. Norris to work after hours to complete a task.

35. Mr. Norris scheduled total hip replacement surgery for March 18, 2020 and informed Mr. Steere.

36. Before his hip surgery, Mr. Norris requested the following accommodations from Mr. Steere: time off for surgery; one week of recovery time in a non-duty status; and two weeks of light duty status while on the job.

37. On January 30, 2020, Mr. Steere sent Mr. Norris an email with the following subject: "Follow up to our discussion."

38. The email purported to coach Mr. Norris in several areas, such as "Take time to teach," "Follow the specs," and "Drive harder."

39. The email concluded, "Lets sit down and a have a check in at the end of February."

40. On February 20, 2020, Mr. Steere and vice president of field operations, John Herrera, fired Mr. Norris.

41. As alleged above, Defendant not only fired Mr. Norris only weeks before his scheduled surgery, but also 8 days before the "sit down" at the end of February.

42. On May 27, 2020, Mr. Norris had successful hip surgery and returned to full duty with another employer on June 23, 2020.

## CAUSES OF ACTION

### Count One:
### Violation of the Americans with Disabilities Act – Unlawful Discharge

43. The preceding paragraphs are incorporated into Count One as if fully set forth herein.

44. Mr. Norris' degenerative joint disease in his left hip is a physical impairment under the ADA.

45. Mr. Norris was substantially limited with respect to the major life activities of walking, lifting, carrying, bending, concentrating, and thinking.

46. As a result of his degenerative joint disease, Mr. Norris (a) had a physical impairment that substantially limited one or more life activities; (b) had a record of such impairment; and (c) was regarded by Defendant as having such impairment.

47. Mr. Norris was a qualified individual able to perform the essential functions of his job as a superintendent and other available positions for which he was qualified with reasonable accommodation.

48. Defendant violated Mr. Norris' rights under the ADA by discharging him because of a disability for which there were reasonable accommodations.

49. As a direct result of Defendant's discriminatory conduct, Mr. Norris has lost wages and other benefits; he has suffered emotional distress, humiliation, embarrassment,

and loss of enjoyment of life; and he has suffered other non-pecuniary losses, all of which will be proven at trial.

### Count Two:
### Violation of the Colorado Anti-Discrimination Act – Unlawful Discharge

50. The preceding paragraphs are incorporated into Count Two as if fully set forth herein.

51. Mr. Norris' degenerative joint disease in his left hip was a physical impairment under the CADA.

52. Mr. Norris was substantially limited with respect to the major life activities of walking, lifting, carrying, bending, concentrating, and thinking.

53. As a result of his degenerative joint disease, Mr. Norris (a) had a physical impairment that substantially limited one or more life activities; (b) had a record of such impairment; and (c) was regarded by Defendant as having such impairment.

54. Mr. Norris was a qualified individual able to perform the essential functions of his job as a superintendent and other available positions for which he was qualified with reasonable accommodation.

55. Defendant violated Mr. Norris' rights under the CADA by discharging him because of a disability for which there were reasonable accommodations.

56. As a direct result of Defendant's discriminatory conduct, Mr. Norris has lost wages and other benefits; he has suffered emotional distress, humiliation, embarrassment, and loss of enjoyment of life; and he has suffered other non-pecuniary losses, all of which will be proven at trial.

## Count Three:
## Violation of the Americans with Disabilities Act – Retaliation

57. The preceding paragraphs are incorporated into Count Three as if fully set forth herein.

58. Mr. Norris was engaged in a statutorily protected activity under the ADA when he requested accommodations following his hip replacement surgery.

59. Mr. Norris was qualified for the position in which he worked, was performing satisfactory work, and was meeting the legitimate expectations of his employer.

60. Because of his disability and his requests for accommodations at work, Mr. Norris suffered adverse employment action when his concerns were ignored, and he was fired shortly after requesting accommodations following his hip replacement surgery.

61. Mr. Norris was treated less favorably than similarly situated employees who did not engage in a statutorily protected activity.

62. As a result of Defendant's unlawful actions, Mr. Norris lost wages and other benefits; he has suffered emotional distress, humiliation, embarrassment, and loss of enjoyment of life; and he has suffered other non-pecuniary losses, all of which will be proved at trial.

## Count Four:
## Violation of the Colorado Anti-Discrimination Act – Retaliation

63. The preceding paragraphs are incorporated into Count Four as if fully set forth herein.

64. Mr. Norris was engaged in a statutorily protected activity under the CADA when he requested accommodations following his hip replacement surgery.

65. Mr. Norris was qualified for the position in which he worked, was performing satisfactory work, and was meeting the legitimate expectations of his employer.

66. Because of his disability and his requests for accommodations at work, Mr. Norris suffered adverse employment action when his concerns were ignored, and he was fired shortly after requesting accommodations before his hip replacement surgery.

67. Mr. Norris was treated less favorably than similarly situated employees who did not engage in a statutorily protected activity.

68. As a result of Defendant's unlawful actions, Mr. Norris lost wages and other benefits; he has suffered emotional distress, humiliation, embarrassment, and loss of enjoyment of life; and he has suffered other non-pecuniary losses, all of which will be proved at trial.

## Count Five:
### Violation of the Americans with Disabilities Act – Failure to Accommodate

69. The preceding paragraphs are incorporated into Count Five as if fully set forth herein.

70. Mr. Norris has a disability as defined by the ADA in that his degenerative joint disease is a physical impairment that substantially limits a major life activity.

71. Mr. Norris informed Defendant of his condition; medical treatment; and needed accommodations.

72. Mr. Norris requested accommodations from Defendant, such as time off for surgery and light duty.

73. These accommodations would have been effective and would not have posed an undue hardship to Defendant.

74. However, instead of providing Mr. Norris with accommodations, Defendant fired Mr. Norris.

75. The accommodations requested by Mr. Norris would have enabled him to perform the essential functions of his job or of another available position.

## Count Six:
## Violation of the Colorado Anti-Discrimination Act – Failure to Accommodate

76. The preceding paragraphs are incorporated into Count Six as if fully set forth herein.

77. Mr. Norris had a disability as defined by the CADA in that his degenerative joint disease is a physical impairment that substantially limited a major life activity.

78. Mr. Norris informed Defendant of his condition; medical treatment; and needed accommodations.

79. Mr. Norris requested accommodations from Defendant, such as time off for surgery and light duty.

80. These were accommodations available that would have been effective and would not have posed an undue hardship to Defendant.

81. However, instead of providing Mr. Norris with accommodations, Defendant fired Mr. Norris.

82. The accommodations requested by Mr. Norris would have enabled his to perform the essential functions of his job or of another available position.

## PRAYER FOR RELIEF

Wherefore, Plaintiff Todd Rusty Norris requests that this Court enter judgment in his favor and grant the maximum relief allowed by law, including, but not limited to:

(a) back pay;

(b) front pay;

(c) compensatory damages;

(d) punitive damages;

(e) attorney fees;

(f) expert witness fees;

(g) costs;

(h) pre- and post-judgment interest; and

(i) any further relief that is just and equitable under the circumstances.

## JURY DEMAND

Plaintiff Todd Rusty Norris demands a trial by jury on all issues.

Dated this 19th day of May, 2021.

          Respectfully submitted,

          Ted Hess & Associates, LLC

          */s/ Theodore G. Hess*
          Theodore G. Hess, 31594
          110 8th Street
          Glenwood Springs, CO 81601
          Telephone: (970) 945-5300
          Facsimile: (970) 945-2898
          Email: ted@tedhess.com
          *Attorney for Plaintiff*